**SHEPHERD, FINKELMAN,
MILLER & SHAH, LLP**
Kolin Tang (SBN 279834)
Email: ktang@sfmslaw.com
1401 Dove Street, Suite 510
Newport Beach, CA 92660
Telephone: (323) 510-4060
Facsimile: (866) 300-7367

[Additional Counsel Listed
on Signature Page]

*Attorneys for Plaintiff
and the Proposed Classes*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENTEWAN FARAGALLA, On Behalf of Himself and All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>TESLA INC., d/b/a TESLA MOTORS, INC., )<br><br>Defendant. ) | CIVIL ACTION NO. 5:20-CV-1025<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff, Entewan Faragalla ("Faragalla" or "Plaintiff"), by and through his

attorneys, files this action on behalf of himself and all others similarly situated

against Defendant, Tesla Inc. d/b/a Tesla Motors, Inc. ("Defendant" or "Tesla"),

and alleges as follows:

## NATURE OF THE ACTION

1.     Plaintiff brings this action individually and on behalf of a nationwide

class and, in the alternative, on behalf of a state-wide subclass for the State of

California (more fully defined below) for the benefit and protection of purchasers and lessees of Defendant's model years 2014-2016 Model S and 2015-2016 Model X vehicles ("Vehicle(s)").  As alleged herein, Defendant's Vehicles are defective insofar as they are equipped with defective touchscreen media control units ("MCU(s)") which routinely fail after only a few years of normal use, which impacts many of the Vehicles' intended, essential functions, including safety features, and, as a result, places drivers of the Vehicles, including Plaintiff, in unsafe positions.

2.       In manufacturing, marketing, and selling and/or leasing these unsafe Vehicles, Defendant has engaged in unfair, deceptive, and misleading consumer practices with respect to the marketing and sale and/or lease of the Vehicles, and has breached its contract and warranty with the Vehicles' purchasers and lessees, including Plaintiff.

3.       As a result of the Defect (more fully defined below), Plaintiff and class members are unable to utilize their Vehicles as marketed and have incurred damages as a result.  In addition, the Defect poses a significant safety concern, and, though numerous consumers have specifically complained about it, Tesla has failed to adequately address the Defect.

4.       Plaintiff brings this action on behalf of himself and all other similarly-situated consumers to obtain redress for those who have purchased or leased the Vehicles across the United States, and to stop Defendant's false and misleading marketing relating to the sale and lease of the Vehicles.  Plaintiff alleges violations of the California Consumers Legal Remedies Act, Civil Code §§ 1750, *et seq*. ("CLRA"); the Unfair Competition Law, California Business and Professions Code §§ 17200, *et seq*. ("UCL"); breach of express warranty under California law; and breach of the implied warranty of merchantability under California law as well as violations of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

("MMWA"), on behalf of the proposed Nationwide Class and, in the alternative, the proposed California Sub-Class.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2)(A) because the claims relating to the matter in controversy exceed $5 million, exclusive of interest and costs, the proposed Classes have at least 100 members, and this is a class action in which certain of the class members (including Plaintiff) and Defendant are citizens of different states.

6. Venue is proper in this judicial District under 28 U.S.C. § 1391 because Defendant does business throughout this District, and a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this District.

7. At all pertinent times, Defendant was engaged in the marketing, sale and lease of the Vehicles, which are the subject of this lawsuit, in this District and throughout the United States.

## PARTIES

8. Plaintiff Faragalla is, and at all times relevant to this action has been, a resident of Menifee, California, and, thus, is a citizen of California.

9. Defendant is a Delaware corporation and is headquartered in Palo Alto, California. Defendant, thus, is a citizen of Delaware and California. Defendant markets, sells, and leases the Vehicles throughout the United States, including in this District.

## SUBSTANTIVE ALLEGATIONS

10. This is an action brought against Defendant on behalf of Plaintiff and all persons who purchased or leased a model year 2014-2016 Model S or 2015-2016 Model X Vehicle.

11. Tesla was founded in 2003, and launched its first vehicle, the Roadster, in 2008. Thereafter, Tesla designed an all-electric sedan, called the

Model S.  In 2015, Tesla expanded its product line with the Model X, a sport utility vehicle.[1]

12.     Tesla's sales model is unlike that of traditional car manufacturers, in that it does not sell its vehicles through authorized dealerships.  All Tesla sales and leases are conducted online, either by a consumer independently, or at one of Tesla's in-person stores or showrooms.[2]  Every sale or lease of a Tesla vehicle, including the Vehicles, is a direct transaction between the consumer and Tesla, unless purchased used from a third party.

13.     Defendant describes the Model S as "the best car in its class in every category."  Further, "[c]ombining safety, performance, and efficiency, Model S has reset the world's expectations for the car of the 21st century with the longest range of any electric vehicle, over-the-air software updates that make it better over time, and a record 0-60 mph acceleration time of 2.28 seconds as measured by Motor Trend."[3]

14.     Additionally, Defendant describes its Model X as "the safest, quickest and most capable sport utility vehicle in history."[4]

15.     However, the Vehicles do not, in fact, "become better over time," and are neither safe nor capable in the long-term, as the MCU, which controls all essential functions of the Vehicles, including several safety features, inexplicably fails after only a few years of normal use.  Defendant has failed to ensure the safety

---

[1] *About Tesla*, Tesla, accessible at https://www.tesla.com/about (last visited Apr. 22, 2020).

[2] Peter Aitken, *The 6 Main Differences Between Buying a Tesla and Buying a Car from Other Brands*, Business Insider (Jul. 18, 2019), accessible at https://www.businessinsider.com/tesla-vs-other-car-difference-electric-charger-2019-7 (last visited Apr. 22, 2020).

[3] *About Tesla*, Tesla, accessible at https://www.tesla.com/about (last visited Apr. 22, 2020).

[4] *Id.*

of Vehicle purchasers and lessees and has, in fact, greatly jeopardized their safety by selling and leasing Vehicles that pose a severe danger.

16.     The Defect at issue in this case relates to the Vehicles' touchscreen MCU, a system designed to attract buyers who want to manage available technology while on the road, while minimizing distractions and maximizing safety.  Tesla allows purchasers and lessees to customize the features controlled by their Vehicles' MCUs, several of which are add-on items that customers pay extra for when purchasing a Vehicle.

17.     The MCU is the gateway between the user and the Vehicles' safety, navigation, communications, and entertainment features.  However, the Vehicles are defective insofar as, after a few years of normal, day-to-day usage, the MCU in the center console routinely goes blank, disabling several essential functions of the Vehicle, including safety features, such as: exterior lights; acceleration settings; steering modes; regenerative braking; stopping mode; the entire sound system, including the turn-signal tones; displaying warning notifications; critical gauges; GPS navigation; self-driving mode; rear view camera; ability to charge; suspension; heating and air conditioning; and the sunroof, among others (the "Defect").

18.     As a result of the Defect, the Vehicles' MCUs frequently go blank, freezing and/or crashing and rendering many of the Vehicles' features inoperable. This poses a safety risk because when the system goes blank and malfunctions, it causes drivers to become distracted and it causes safety-related systems (including, for example, critical gauges and warning notifications) to fail.

19.     Defendant has long known or should have known of the Vehicles' MCU problems from multiple sources.  These sources include warranty claims data; consumer complaints made directly to Defendant, collected by the National Highway Transportation Safety Administration ("NHTSA"); and consumer

complaints posted on public online forums.  By its own admission, Tesla has stated that "[s]ince we own all of our service centers, we are aware of every incident that happens with our customer cars and we are aware of every part that gets replaced. Whenever there is even a potential issue with one of those parts, we investigate fully."[5]  Yet, Defendant has failed to warn purchasers and lessees about the possibility of the Vehicles' MCUs malfunctioning and disabling the Vehicles' essential features, including numerous safety features.  Defendant did not include any such warnings or instructions in its Owner's Manuals,[6] or in any of its other representations about the Vehicles.  In fact, Defendant has made no efforts to make purchasers and lessees aware of any MCU malfunction issues.

20.     Tesla dedicates over forty pages of its Model S and Model X Owner's Manuals to describing the various features of the MCU, including the system's controls (including exterior lights, acceleration settings, steering modes, regenerative braking, stopping mode, and autopilot); climate controls; maps and navigation; media and audio; phone; air suspension; calendar; safety and security settings; HomeLink Universal Transceiver; connecting to WiFi; software updates; and the Vehicles' mobile app.[7]  Nowhere in these sections, or anywhere in the Owner's Manuals, does Tesla address the possibility that the MCU screen might go blank and malfunction, disabling all of these features, including safety features.  At most, in its Owner's Manuals, Tesla explains: "If your touchscreen is unresponsive

---

[5] The Tesla Team, *A Grain of Salt*, Tesla (June 9, 2016), accessible at https://www.tesla.com/blog/grain-of-salt (last visited Apr. 28, 2020).
[6] *See* Tesla Model S Owner's Manual, accessible at https://www.tesla.com/sites/default/files/model_s_owners_manual_north_america_en_us.pdf (last visited Apr. 28, 2020) ("Model S Manual"); Tesla Model X Owner's Manual, accessible at https://www.tesla.com/sites/default/files/model_x_owners_manual_north_america_en.pdf (last visited Apr. 28, 2020) ("Model X Manual") (collectively "Owner's Manuals").
[7] *See* Model S Manual at 118-159; Model X Manual at 139-181.

or demonstrates unusual behavior, you can restart it to potentially resolve the issue" or "power cycle" the Vehicle, emphasizing that "restarting the touchscreen should be done only when the vehicle is in Park."[8]  However, oftentimes, drivers are not in a position to shift their Vehicles into "Park" when the MCU malfunctions (for example, if they are driving on a highway), and even when drivers do attempt to restart their touchscreens or power cycle their Vehicles after the Defect manifests, restarting does not resolve the issue.  Tesla offers no other instruction on how a user might attempt to troubleshoot or correct the issue.  Tesla offers no guidance and no solution to this problem, which shuts down numerous essential functions of the Vehicle, including numerous safety features.

21.    The Vehicles are covered by a New Vehicle Limited Warranty, which includes a Basic Vehicle Limited Warranty[9] and a Parts, Body & Paint Repair Limited Warranty,[10] which specifically covers the touchscreen and microcontroller (collectively, "Warranty").  Under the Warranty, Tesla warrants that it will cover the repair or replacement necessary to correct defects in the materials or workmanship of any parts manufactured or supplied by Tesla that occur under normal use for a period of 4 years or 50,000 miles, whichever comes first.

22.    Tesla has represented that safety is a paramount concern, that "improving safety is our primary goal, even after a customer purchases their car," and has explained that the "massive amount of real-world data gathered from our cars' eight cameras, 12 ultrasonic sensors, and forward-facing radar" helps Tesla

---

[8] Model S Manual at 50-51; Model X Manual at 61-62.
[9] New Vehicle Limited Warranty, Model S, Model X, Model 3, Model Y, accessible at https://www.tesla.com/sites/default/files/downloads/tesla-new-vehicle-limited-warranty-en-us.pdf (last visited Apr. 28, 2020).
[10] Tesla Parts, Body, and Paint Repair Limited Warranty, accessible at https://www.tesla.com/sites/default/files/downloads/tesla-parts-accessories-body-repair-limited-warranty-en-us.pdf (last visited Apr. 28 2020).

ensure that accidents are less likely to occur.[11]  Tesla further explains that its new safety features are implemented in older model year Vehicles through software updates, which is "just another way that we are helping to protect Tesla drivers and passengers, and others on the road, every day."[12]  However, none of these safety features are operable or controllable when the MCU malfunctions.

23.    Specifically, Tesla has stated that the "Model S gets faster, smarter, and better as time passes," with updates ensuring "added functionality, enhanced performance, and improved user experience" including "important active safety features."[13]  Further, Tesla has stated that it "engineered Model X to be the safest SUV ever."[14]

24.    However, despite Defendant's representations that driver safety is a paramount concern, that the Vehicles are high-performance, and warranting that it will "repair or replace" the touchscreen and microcontroller, among other parts, defective in material or workmanship, Defendant sells its Vehicles knowing that the MCUs malfunction.  Specifically, Defendant omits that the MCUs may go blank, disabling various essential features, including safety features, and omits a solution for how a user can effectively solve this problem.  Despite requests by Plaintiff and members of the proposed Classes, Defendant has refused to properly and sufficiently repair and/or replace this known Defect, which is a serious safety hazard.  Defendant's actions and omissions constitutes a breach of the Warranty.

---

[11] The Tesla Team, *More Advanced Safety for Tesla Owners*, Tesla (May 2, 2019), accessible at https://www.tesla.com/blog/more-advanced-safety-tesla-owners (last visited Apr. 28, 2020).

[12] *Id.*

[13] The Tesla Team, *Model S Has You Covered*, Tesla (Mar. 19, 2015), accessible at https://www.tesla.com/blog/model-s-has-you-covered (last visited Apr. 28, 2020).

[14] The Tesla Team, *Tesla Model X the First SUV Ever to Achieve 5-Star Crash Rating in Every Category*, Tesla (June 13, 2017), accessible at https://www.tesla.com/blog/tesla-model-x-5-star-safety-rating (last visited Apr. 28, 2020).

25.     Tesla has not found a solution to the MCU Defect.  Instead, Tesla tells Vehicle owners and lessees to wait for forthcoming software updates that should supposedly fix the MCU problems (which ultimately fail to actually fix the problems), or, alternatively, simply replaces the defective parts with equally defective parts, leaving consumers caught in a cycle of use, malfunction, and replacement.

26.     As a result of the Defect, Plaintiff and members of the proposed Classes cannot rely upon their Vehicles to safely transport them from place to place because, at any time, the MCUs may malfunction, disabling various essential features of the Vehicles, including safety features.

27.     Accordingly, Defendant's marketing statements that the Vehicles improve over time, are engineered to include premier safety features, and deliver superior performance are false and deceptive, and Defendant's omissions regarding the Defect constitute breach of express and implied warranties.

**Plaintiff's Experience With His Vehicle**

28.     On or about April 8, 2015, Faragalla purchased a model year 2015 Tesla Model S directly from Tesla's headquarters in Palo Alto, California via Tesla's website, with delivery to take place on or about May 11, 2015.  Faragalla paid an additional $4,250 for the tech package with autopilot.  One of the reasons Faragalla purchased the Vehicle was because of its high-tech features, including several of the features accessible solely through the MCU.

29.     Prior to purchase, Faragalla recalls extensively researching the features of the Vehicle.  The primary reasons for purchasing the Vehicle were the safety and technology features available through and controlled by the MCU.

30.     Faragalla has followed Tesla's instructions in its Model S Manual to install software updates immediately when they become available.

31.     On countless occasions after purchasing the Vehicle, and on some

occasions while driving, the MCU in Faragalla's Vehicle spontaneously went blank, disabling various features, including the safety features, accessible solely through the MCU.  On each such occasion, Tesla personnel instructed Faragalla to conduct a soft and hard reset, which worked to restart the MCU, except for the last time, requiring a replacement of the MCU.

32.    Concerned for his safety, the safety of others in his Vehicle, and others on the road, Faragalla took his Vehicle to a Tesla service center in Rancho Cucamonga, California on March 9, 2020 for Tesla's recommendation on how to address or repair the issue.  Tesla performed a general diagnosis on the Vehicle, and removed and replaced the MCU.

33.    Faragalla paid out of pocket ($2,290.50) for the diagnosis, repair, and replacement, as Tesla claimed they were not covered by Tesla's Warranty.

34.    However, Tesla's solution was no solution at all, as Tesla simply replaced a defective MCU with an equally defective MCU.

35.    Faragalla contested the charge of $2,290.50 for the replacement of the MCU claiming that his experiences demonstrated that there was a Defect associated with the MCU.  The Tesla service manager disagreed and asserted it was not a Defect and required Faragalla to pay out of pocket for the MCU replacement. During his time in the Tesla service center, several Tesla employees came forward to Faragalla and stated that the MCU indeed suffered from a Defect, and they have seen the MCU failures occur on a recurring basis.  The Tesla employees added that the Vehicles should have been recalled due to the Defect.

36.    Tesla's purported repair did not correct the Defect in the Vehicle in order to permit Faragalla to safely and properly continue driving his Vehicle without the risk of the MCU spontaneously going blank and malfunctioning, disabling various features of the Vehicle.

37.    Faragalla would not have purchased the Vehicle, or would not have

paid the purchase price that he did, had he known that he would not be able to safely drive the Vehicle without risk of the MCU going blank, malfunctioning, and disabling numerous features of the Vehicle, including safety features.

**Class Members' Experiences With the Vehicles**

38.    Plaintiff's experiences mirror those of numerous other Tesla Vehicle purchasers and lessees.  The internet contains numerous complaints from owners and lessees who, like Plaintiff, have experienced the MCUs in their Vehicles malfunction, disabling numerous features of the Vehicles.  Tesla operates an online discussion forum restricted to verified Tesla owners.  The following is a sample of complaints appearing on Tesla's online forum[15]:

> **Submitted by DallasModelS**
> **Posted on April 24, 2019**
> **Location unknown**
>
> My MCU was always rebooting and I had always pointed out the service center. The issue started at around 39k. They said it was nothing. Again it had pointed out at 49k (before the warranty expired). Nothing was done. The answer I always got was "it seems to be working fine now, just reset the trips and clear the address history and it will be fine". Never worked since then. Screen would always reboot and locations wouldn't load. For the last 10k miles we had been using google maps. Couple of months ago I took it again and they flashed the CPU and reinstalled the software and I was told that it should be fine now ($175). Last week, I was driving and the screen starting rebooting again and was stuck in a constant loop where the car was functional but nothing else worked. I had to take it in right away considering it was 90 degrees and I had a toddler in the car and the

---

[15] All complaints listed from Tesla's online discussion forum are accessible at the following web addresses: https://forums.tesla.com/forum/forums/mcu-always-had-problems-and-finally-failed-costing-fortune (last visited Apr. 28, 2020); https://forums.tesla.com/forum/forums/screen-shut-completely-while-driving#new (last visited Apr. 30, 2020); https://forums.tesla.com/forum/forums/mcu-failures (last visited Apr. 30, 2020).

AC wouldn't turn on. Same problem as before but not the MCU unit had to be replaced. Almost 3k with labor (they did pay for half of it because it was a known issue and I did point it out before the warranty expired). Wait what. Why should I even pay for half of it? The service managers are just a human shield for deflection.

And check this out. I dropped it off with 59 miles because it was an emergency and a week later they did not plug it in and I got three notifications to plug in the car. I called them with no answer. The charge dropped below 10 miles and the 12V battery died while at the service center. And I had to pay for that as well! Nope not their fault. The customer service representative did not even know that could happen. It is comical.

Love the car but I'm afraid that service centers have no empathy and are just cold. Just can't make a product, you have to stand behind it. How does a MCU which controls 99% of the function of the car fail in under 3 years?

**Submitted by p.c.mcavoy**
**Posted on April 24, 2019**
**Location unknown**

I know another owner, his is a[n] older MS, but similar story where was having symptoms of issues, yet no hard failure, prior to his MCU being diagnosed as failed about a month or so after his warranty expired. Similar results where local service center failed to cover the replacement of the MCU under warranty and failed to provide him with diagnostic logs which he felt could substantiate the presence of stored errors confirming issue started before the 4 yr/50k mile expired.

I know some of you will find stories like this hard to believe, but this individual was a very ardent supporter of Tesla, was considering a new roadster as his next vehicle, but this soured his willingness to be an advocate for the brand going forward.

Not everyone gets the same level of goodwill which some of you experience.

**Submitted by wayne.xin**
**Posted on April 25, 2016**
**Location unknown**

I had a similar experience. A couple of weeks ago, Tesla mobile service came to my house to do a recall work for passenger side airbag, when the technician finishes his work the central screen stopped working but he left by saying he will ask someone to check the cause of the problem. After that I never head the technician's reply, then I took the car to the service center they want me to pay the full cost to replace the touch screen unit (include MCU) because the vehicle is out of Warranty by one month.

**Submitted by Bighorn**
**Posted on February 1, 2020**
**Location unknown**

Mine failed at 283k miles with lots of temperature extreme exposure ranging from 26 below to 116F. The MCU failure is well known and related to eMMC longevity. It has a known lifetime of P/E cycles and it's been programmed to write a tremendous amount of data. There is debate as to whether all data recording is necessary, but the failures have nothing to do with exposure to the weather. Some DIYers have been switching in higher capacity eMMCs, but it is not an easy task for physical desoldering and reprogramming reasons.

**Submitted by Aneurysm**
**Posted on April 24, 2019**
**Location unknown**

This past weekend while I was driving, my screen shut off completely. I was still able to control the acceleration and steering and so I made my way across a lane to the shoulder (I put my turn signal on but since screen was shut off, I am not sure if it was working). Once on shoulder, It rebooted or I forced the reboot (cant remember exactly) and then it was fine afterward.

**Submitted by jonabramson**
**Posted on April 24, 2019**
**Location unknown**

I had this happen on the highway on a long trip. Was listening to SiriusXM through my phone and black screen. Seems a bit freaky when it happened but I've done a few manual reboots so I know what it looks like. My wife says I'm just driving around my computer. Didn't know it would be like my Windows PC. Hopefully, the need to reboot resolves soon with an update.

**Submitted by Hwhsu**
**Posted on April 24, 2019**
**Location unknown**

Happened to me twice in last 30 days, while driving. Scared the heck out of me

**Submitted by jer1776**
**Posted on April 26, 2019**
**Location unknown**

Happened to me yesterday. Screen did not turn on when I entered the car and then waited about a minute and then it booted up. I did notice that the AC was not going, but the fan was. The screen went blank about a minute or two after this and this time I was driving, but luckily it was in my neighborhood, but scared the crap out of me. The car was still drivable, but again noticed that the fan was on, but it did not seem to be blowing AC. Stopped the car and did a reboot. On 2019.8.5. I also notice I get a lot of brake checking while on Autopilot with this update. Hopefully that will be fixed in 12.1.

**Submitted by marcelletaglecornell**
**Posted on May 11, 2019**
**Location unknown**

It happened to me twice a couple of days after software update. Both times I was driving on the freeway. The first time, screen shut off for a few seconds then rebooted. The second time around, I was driving with family on the freeway on the way from Tucson to Phoenix. It started with flickering screen then it shut off. It was kinda [sic] scary as I didn't know whether my car would stall in the middle of the freeway. I exited on the first exit I saw, did not know how to reboot the car. When we finally figured how to reboot the car, it did not take long. No further issues since then.

**Submitted by dborn@nsw.au**
**Posted on December 12, 2017**
**Location unknown**

My guess? You need a new center console. I had a similar problem earlier this year. Part of the attempted resuscitation (which failed, by the way), was a deep reboot. The instructions were to hold down the brake for the duration, press and hold both scroll wheels until the T logo appeared on the screen. About 45 secs!! The replacement should

be around 2 hours labor. Mine had to be completely reprogrammed as if a new car. Very annoying. I lost EVERY setting /pairing I had in there. Oh, you need to remove any USB sticks before trying the maneuver.

**Submitted by tozz**
**Posted on January 30, 2018**
**Location unknown**

This sounds like your eMMC has failed. The eMMC is a soldered flash drive (like a SD card) that is used to store data from your car (like logs). These SD cards have a limited lifespan and a limited write cycle (like SSDs).

So all these eMMC chips will fail sooner or later (depending on temperature, number of blocks written to the chip, etc). It's a shame Tesla didn't make these replaceable. Then you would be fine with a $10 flashdrive instead of a $4000 new MCU.

**Submitted by bill**
**Posted on February 5, 2020**
**Location unknown**

Is anyone tracking MCU failures like they are tracking Updates? It would be really interesting to know how many MCUs have failed. What age they failed at, years and miles? What was the cause of the failure, i.e. was it the logging memory chip?

I suspect Tesla knows but probably would not tell us.

**Submitted by brdinjd**
**Posted on February 6, 2020**
**Location unknown**

Just paid $2933 for my obligatory MCU replacement today. 2015 85D. Just out of warranty (of course). I suspect my story is (or will be) as common as it is frustrating. I do feel this issue should be on the level of recall since it is actually caused by overactive use by Tesla (e.g. logging) for their own purposes.

39.     Similarly, there are also numerous complaints about this issue on the NHTSA website[16]:

**NHTSA ID Number: 11256588**
**Incident Date January 12, 2019**
**Consumer Location SARASOTA, FL**
**Vehicle Identification Number 5YJSA1H15EF\*\*\*\***
**2014 Tesla Model S**

> Touch screen control panel has been deteriorating over the past 2 years. Since the screen is an integral part of the vehicle control system functionality of the vehicle control is beginning to be impacted. Tesla has had a known problem, but has not been willing to repair or replace. I believe this is a safety concern that NHTSA should investigate and that tesla should be held accountable.

**NHTSA ID Number: 11279959**
**Incident Date November 6, 2019**
**Consumer Location PORTER RANCH, CA**
**Vehicle Identification Number 5YJSA1H18EF\*\*\*\***
**2014 Tesla Model S**

> Vehicles media control unit (MCU) has a known and well-publicized defect caused by over-logging on the emmc chip. This defect causes the MCU to glitch, reboot and fail eliminating the ability to control both safety and convenience features including climate control, defroster, GPS, audible safety warnings and other systems. Vehicle

---

[16] The NHTSA complaints listed herein are a sample of complaints filed concerning the Defect.  All complaints listed can be accessed at the following web addresses:
https://www.nhtsa.gov/vehicle/2013/TESLA/MODEL%252520S/5%252520HB/RWD (last visited Apr. 28, 2020);
https://www.nhtsa.gov/vehicle/2014/TESLA/MODEL%252520S/5%252520HB/RWD (last visited Apr. 28, 2020);
https://www.nhtsa.gov/vehicle/2015/TESLA/MODEL%252520S%25252060KWH/5%252520HB/RWD (last visited Apr. 28, 2020);
https://www.nhtsa.gov/vehicle/2016/TESLA/MODEL%252520X%25252060D/SUV/AWD%252520Later%252520Release (last visited Apr. 28, 2020).

can also stop charging. . . . The most recent "fix" via an over the air update simply delays the issue until vehicle is out of warranty but based on current evidence this defect will effect [sic] 100% of cars, both model s and x, made between 2012 and early 2018.

**NHTSA ID Number: 11312177**
**Incident Date February 13, 2020**
**Consumer Location SPRING HILL, TN**
**Vehicle Identification Number 5YJSA1H1XEF\*\*\*\***
**2014 Tesla Model S**

The Tesla Model S has a bad MCU unit (media control unit) every car made suffers from a programming overload that ruins the tegra 3 emmc flash memory. Once the memory corrupts, the media control unit shuts off permanently. A driver can end up stranded because the car will also stop charging or limit the charge to 21%. The safety systems attached to the media control unit are all off and no longer function. Safety backup cameras, audible alerts and perimeter alarms that would tell you if a person/object is in proximity to the car, all no longer function. The inability to know and react to these safety systems presents a life/safety issue. A child could be behind the car and the car will not alert the driver and the driver cannot see because the camera is also off. The cars media control unit also shuts off mid-drive. The unit turning off without warning, presents a life safety issue.

**NHTSA ID Number: 10927077**
**Incident Date October 19, 2016**
**Consumer Location LOS GATOS, CA**
**Vehicle Identification Number 5YJSA1E21FF\*\*\*\***
**2015 Tesla Model S**

[A] couple of weeks ago the computer system of the car experienced a software crash. As a result the side mirrors did not open and the rear view camera did not work. The car was still drive-able I needed to take my son to school so didn't have time to troubleshoot this. This was very unsafe to drive, particularly on the freeway, and I believe it is illegal in California to drive without working mirrors. I contacted tesla about this and they did not offer any specifics. I believe this is a major issue. Operational mirrors are essential equipment . . . . Tesla's plan to replace side mirrors with video cameras is worrisome in this

regard.

**NHTSA ID Number: 11207819**
**Incident Date May 10, 2019**
**Consumer Location SEATTLE, WA**
**Vehicle Identification Number 5YJSA1S27FF****
**2015 Tesla Model S**

There is a flaw in the tesla emmc which will inevitably cause a critical portion of the chip to fail prematurely, due to constant excessive logging within the touchscreen system. Ultimately the memory chip fails and the touchscreen goes black, placing the car in limp home mode, the parking sensors and rear view camera no longer work, it will not charge and effectively becomes un-drivable when the battery runs out. The emmc is a linchpin component for the functionality of the car.

The emmc, though it does not control the car's propulsion, braking or steering, is the heart of the touchscreen which is used to turn on headlights, adjust hvac and all car settings run through the touchscreen. The hvac unit now has a "dog mode" which keeps the cabin cool for dogs or occupants waiting in car. The failure of the touchscreen unit while in dog mode could result in heat-related fatality . . . .

For more information here are some references:

- video showing an engineer who's helped several hundred customers disable logging between minutes 8 through 12:

Https://youtu.be/o-7b1waoj9q?t=499

- a recent article explaining the flaw:
https://www.thedrive.com/news/27945/a-single-component-can-brick-older-teslas-and-tesla-wont-fix-it

This has been a known problem by the Tesla owners community for upwards of a year now and requires a simple software update to remedy - disable logging to emmc memory.

According to other owners, this problem exists on all current and past tesla models and it is a matter of "when" not "if" for all chips to fail unless they make a change to their software logging.

**NHTSA ID Number: 11281197**
**Incident Date October 11, 2019**
**Consumer Location NORTHRIDGE, CA**
**Vehicle Identification Number 5YJSA1H23FF\*\*\*\***
**2015 Tesla Model S**

Touchscreen that controls most vehicle functions including hvac became disabled because a chip in the touchscreen went bad.

The car was unable to charge and would take approx 5 mins to start at times.

Unable to clear fogged windows with hvac

**NHTSA ID Number: 11302674**
**Incident Date January 13, 2020**
**Consumer Location GARDNERVILLE, NV**
**Vehicle Identification Number 5YJSA1E24FF\*\*\*\***
**2015 Tesla Model S**

The main instrument panel (call the media control unit or "MCU") eventually fails in all older Teslas (pre 2018) due to a defect in the design of MCU and overuse by excessive writing of data to the memory with firmware updates as well as logging for tesla's own purposes. The consumer has no ability to turn off updates or logging which means that tesla is causing the failures with its own actions. The MCU has been shown to fail within approximately 4-5 years (or right after the warranty expires).

This is a significant safety issue as once the MCU fails, many functions of the car fail. This includes the backup camera, the audio indicators for turn signals and other alerts, climate control, as well as the safety monitors associated with "auto-pilot" (e.g. all restrictions are removed).

Tesla's position is that the consumer must pay to replace the MCU once it fails if the car is out of warranty. They have upgraded the

MCU design and logging process for newer Teslas (post 2018) but all cars from 2012 to 2018 are affected by the original defect[] . . . . Hence, this petition is to require tesla to acknowledge the defect in the original MCU and replace via recall, and/or compensate customers who were forced to pay for replacement.

**NHTSA ID Number: 11315374**
**Incident Date February 10, 2020**
**Consumer Location BRYANT, AL**
**Vehicle Identification Number 5YJSA1E29FF****
**2015 Tesla Model S**

No warning whatsoever, the 17" touchscreen goes black on our Model S. I try the reboot, but nothing happens. It's early February, so here in Alabama, it's cold. We keep the car in the garage. No climate control is working. We pull out, head to my wife's families house 7-8 miles away, and the windshield has a couple of inch strip at the bottom that visible. So driving between 10-15 mph, we make it to their house. I finally get ahold of tesla a little while later. After about 30 minutes or less on the phone with them, they said they see what the problem is. The lady stated that the tesla engineers know about this problem and have been working to get it fixed. I was originally scheduled for repair on February, 17th. They contacted me two or three days before then and said they were anticipating the part to arrive on February 27th, so they proactively rescheduled my appointment for February 28th. After calling, emailing and then finally chatting tesla on February 27th, they said the part still hadn't arrived. They told me they were going to escalate my case and they also rescheduled my appointment for March 13th with no guarantee that the part would be in by then. A loaner vehicle wasn't offered after asking multiple times. The reason was because my vehicle was out of warranty. We purchased this vehicle used from a third party, not tesla. We had the vehicle almost a year and a half before this happened. The vehicle was stationary. We are on rural to country (not dirt) roads. The HVAC doesn't work at all, nor does the parking sensors. Navigation is out, pretty much all the extra features (mostly) you can forget about using.

**NHTSA ID Number: 11317875**
**Incident Date March 1, 2020**
**Consumer Location PALM BEACH, FL**
**Vehicle Identification Number 5YJSA1H24FF****

1

**2015 Tesla Model S**

2

3

4

The main computer display and memory card fails - freezing all safety monitoring of the car, lose control of charging (i.e. refueling). Suspension control lost, basically everything frozen without this - it is known common failure emmc chip.

5

6

7

8

**NHTSA ID Number: 11317499**
**Incident Date March 3, 2020**
**Consumer Location RENO, NV**
**Vehicle Identification Number 5YJSA1H27FF\*\*\*\***
**2015 Tesla Model S**

9

10

11

MCU failure due to mmc drive failing. Known issue for months. No parts. Cannot charge and therefore cannot drive. Been a week with no communication. No plan.

12

13

14

15

**NHTSA ID Number: 11300619**
**Incident Date November 8, 2019**
**Consumer Location ROCKLIN, CA**
**Vehicle Identification Number 5YJXCAE29GF\*\*\*\***
**2016 Tesla Model X**

16

17

I have had problems with my Tesla . . .
computer shot down while driving and screen went blank. City streets

18

19

Tomorrow again I am taking the car for repair because of doors malfunctioning

20

21

I don't find it safe. I left it in the service center. I have only driven it 2000 miles over 13 months.

22

23

24

25

26

27

40.     Defendant had knowledge that its Vehicles contained the Defect, and yet, continued to market its Vehicles without disclosing the existence of the Defect to consumers.  Despite the numerous consumer complaints posted on NHTSA, on Tesla's online forum, and communicated to Tesla through consumers seeking service related to the Defect, Tesla has no solution to this serious problem, and continues to omit the existence of the Defect from its marketing.

28

Class Action Complaint
21

41.     Defendant had knowledge that its misrepresentations and omissions regarding the safety and performance of the Vehicles were misleading, yet it continued to make the same misrepresentations and omissions regarding each subsequent model year Vehicle to Plaintiff and members of the proposed Classes, despite the fact that Defendant knew that the Vehicles were defective.

42.     Defendant's marketing practices are clearly meant to mislead consumers as to the safety and performance of the Vehicles.  As a direct and proximate result of Defendant's conduct, Plaintiff and the proposed Classes have suffered, and continue to suffer, injury in fact, ascertainable loss, and lost money. Defendant, despite having knowledge that its representations and omissions are misleading to Plaintiff and the proposed Classes, continues to market the Vehicles in a deceptive manner.

43.     Plaintiff and the proposed Classes are at risk of suffering further injury if the relief sought is not granted.

**California Contacts**

44.     Defendant is headquartered in California at 3500 Deer Creek Road, Palo Alto, California.

45.     Defendant does substantial business in California, with a significant portion of its sales and leases made in California.

46.     California hosts a significant portion of Defendant's U.S. operations, including, *inter alia*, its sales and service offices, factory, and financial service offices.

47.     In addition, the conduct that forms the basis for each and every Class member's claims against Defendant emanated from its headquarters in California, and is consistent with directives of its personnel in California.

48.     Defendant's marketing personnel are located at its California headquarters, and the marketing schemes, as well as the Owner's Manuals

describing the safety and performance of the Vehicles (which omitted to describe the Defect), and website representations, were made and implemented from Defendant's California headquarters.

49.    Defendant's California personnel implemented its deceptive marketing scheme and other materials and have refused to repair the Defect in Plaintiff's and the proposed Class members' Vehicles.

50.    Defendant has significant contacts with the State of California, and the conduct at issue herein emanated from California.

51.    As a result of Defendant's conduct, Plaintiff and members of the proposed Classes have suffered injury in fact and have otherwise suffered damages, and have been harmed and will continue to be harmed in the future, unless Defendant is held accountable through this litigation.

52.    Plaintiff seeks injunctive relief, actual damages, disgorgement of profits, statutory damages, attorneys' fees, costs, and all other relief available to the Classes, as defined herein.

## CLASS ACTION ALLEGATIONS

53.    Plaintiff brings this lawsuit, both individually and as a class action, on behalf of similarly-situated purchasers and lessees of the Vehicles pursuant to Federal Rule of Civil Procedure 23(b)(2) and (3) and seeks to represent the following Class, defined as:

**Nationwide Class**
All owners and lessees of Defendant's model year 2014-2016 Model S and/or model year 2015-2016 Model X Vehicles purchased or leased in the United States.

54.    In the alternative, Plaintiff brings this action as a class action on behalf of the following Sub-Class, defined as:

**California Sub-Class**
All owners and lessees of Defendant's model year 2014-2016 Model S and/or model year 2015-2016 Model X Vehicles purchased or leased in California.

Excluded from the Nationwide Class and the California Sub-Class (collectively and defined herein, the "Class" or "Classes") are Defendant, as well as Defendant's affiliates, employees, officers and directors, and the Judge to whom this case is assigned.  Plaintiff reserves the right to amend the definition of the Classes if discovery and/or further investigation reveal that the Classes should be expanded or otherwise modified.

55.     **Numerosity/Impracticability of Joinder:** There are so many members of the Classes that joinder of all members is impracticable.  Tesla delivered over 30,000 Model S Vehicles in 2014,[17] over 50,000 Model S Vehicles in 2015,[18] and over 76,000 Model S Vehicles in 2016.[19]  Additionally, Tesla delivered over 18,000 Model X Vehicles in 2015 and 2016.[20]  Accordingly, Plaintiff estimates that there are thousands of members in the Class who are readily identifiable from information and records in Defendant's possession, custody, or control.  The disposition of these claims will provide substantial benefits to the members of the Classes.

---

[17] *See* https://forums.tesla.com/forum/forums/how-many-cars-sold-2014-and-2015 (last visited Apr. 30, 2020).
[18] Yoni Heisler, *Tesla Sold More Than 50,000 Model S Sedans in 2015, a New Annual Record*, BGR (Jan. 3, 2016), accessible at https://bgr.com/2016/01/03/tesla-model-s-sales-2015/ (last visited Apr. 30, 2020).
[19] Andrew J. Hawkins, *Tesla Delivered Over 76,000 Vehicles in 2016, Falling Slightly Short of Goal*, The Verge (Jan. 20, 2017), accessible at https://www.theverge.com/2017/1/3/14159292/tesla-q4-2016-delivery-production-model-s-x (last visited Apr. 30, 2020).
[20] *Tesla Model X U.S. Sales Figures*, CarSalesBase, accessible at https://carsalesbase.com/us-tesla-model-x/ (last visited Apr. 30, 2020).

56.     **Commonality and Predominance:** There is a well-defined community of interest and common questions of law and fact that predominate over any question affecting only individual members of the Classes.  These common legal and factual questions, which do not vary from members of the Classes, and which may be determined without reference to the individual circumstances of any members of the Classes, include, but are not limited, to the following:

a)      whether the Vehicles suffer from one or more Defect;

b)      whether the Defect causes the MCU to malfunction, disabling many of the Vehicles' essential features, including safety features;

c)      whether the Vehicles have suffered a diminution of value as a result of their defective components;

d)      whether Defendant's marketing and promotion of the Vehicles was false and misleading;

e)      whether Defendant concealed facts from Plaintiff and members of the Classes about the performance and safety of the Vehicles and about the Defect;

f)      whether Defendant knew, or should have known, that its representations were false, or that the representations omitted material information;

g)      whether Defendant had a duty to disclose the Defect to Plaintiff and members of the Classes;

h)      whether Defendant's conduct was a violation of the CLRA;

i)      whether Defendant's conduct was a violation of the UCL;

j)      whether Defendant's conduct was a breach of express warranty under California law;

k)      whether Defendant's conduct was a breach of implied warranty of merchantability under California law;

l)      whether Defendant's conduct was a violation of the MMWA;

m)      whether Defendant's conduct as alleged herein violates public policy; and

n)      whether Plaintiff and the members of the Classes are entitled to damages, restitution, equitable relief, and/or other damages and other

relief, and, if so, the amount and nature of such relief.

57.  **Typicality and Adequacy:**  Plaintiff's claims are typical of the claims of the proposed Classes, and Plaintiff will fairly and adequately represent and protect the interests of the proposed Classes.  Plaintiff does not have any interests antagonistic to those of their respective Classes.  Plaintiff's counsel are experienced in the prosecution of this type of litigation.  The questions of law and fact common to the members of the Classes, some of which are set forth above, predominate over any questions affecting only individual members of the Classes.

58.  **Superiority:**  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  The expense and burden of individual litigation would make it impracticable or impossible for members of the Classes to prosecute their claims individually.  The litigation and trial of the Class-wide claims are manageable.

59.  Unless the Classes are certified, Defendant will improperly retain monies that it received from Plaintiff and members of the Classes as a result of its conduct.  Unless Defendant is required to change its unfair and deceptive practices, it will continue to commit the violations, and the members of the Classes and the general public will continue to be misled.

60.  Defendant has acted and refused to act on grounds generally applicable to the Classes, making appropriate final injunctive relief with respect to the Classes as a whole.

## COUNT I
**Violation of Consumers Legal Remedies Act**
**California Civil Code §§ 1750, *et seq.***
**(On Behalf of the Nationwide Class and, In the Alternative, the California Sub-Class)**

61.  Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

Class Action Complaint
26

62.   This cause of action is brought under the CLRA.  Plaintiff, members of the Nationwide Class, and members of the California Sub-Class are consumers as defined by California Civil Code § 1761(d), and the Vehicles constitute goods within the meaning of the CLRA.

63.   Defendant has violated, and continues to violate, the CLRA by engaging in the following deceptive practices proscribed by California Civil Code § 1770(a) in connection with transactions intended to result in, and that did result in, the sale and/or lease of the Vehicles to Faragalla, members of the Nationwide Class, and members of the California Sub-Class in violation of, *inter alia*, the following provisions:

a)   Representing that the goods have characteristics, uses, or benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

b)   Representing that the goods are of a particular standard, quality, or grade if they are of another (Cal. Civ. Code § 1770(a)(7));

c)   Representing that a transaction involves rights, remedies, or obligations that it does not have or involve (Cal. Civ. Code § 1770(a)(14)); and

d)   Representing that the goods have been supplied in accordance with a previous representation when they have not (Cal. Civ. Code § 1770(a)(16)).

64.   Plaintiff, members of the Nationwide Class, and members of the California Sub-Class, in purchasing and using the Vehicles, did reasonably act in response to Defendant's above representations or would have considered the omitted facts set forth herein as material to their purchasing/leasing decision. Plaintiff, members of the Nationwide Class, and members of the California Sub-Class have suffered damages by the wrongful acts and practices of Defendant that are in violation of California Civil Code § 1781.

65.     The representations and omissions regarding the Vehicles were material to Plaintiff, members of the Nationwide Class, and members of the California Sub-Class.  Defendant intended that Plaintiff, members of the Nationwide Class, and members of the California Sub-Class would rely on these representations and omissions, and they did, in fact, rely on these representations and omissions.

66.     In accordance with California Civil Code § 1780(a), Plaintiff, members of the Nationwide Class, and members of the California Sub-Class seek injunctive relief for Defendant's violations of the CLRA.

67.     In accordance with California Civil Code §§ 1782(a) and (d), Plaintiff has provided Defendant with the appropriate notice and demand, but Defendant has denied the existence of a defect and has refused to provide any class-wide relief to members of the Nationwide Class and members of the California Sub-Class.

68.     Plaintiff seeks for himself, members of the Nationwide Class, and members of the California Sub-Class, compensatory and punitive damages under the CLRA, and also to recover attorneys' fees and costs pursuant to California Civil Code §§ 1780 and 1781.

## COUNT II
**Unlawful, Unfair, and Fraudulent Business Practices in Violation of California Business and Professions Code §§ 17200, *et seq*.
(On Behalf of the Nationwide Class and, In the Alternative, the California Sub-Class)**

69.     Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

70.     The UCL defines unfair competition to include any "unfair," "unlawful," or "fraudulent" business act or practice.

71.     Defendant has violated, and continues to violate, the UCL by misrepresenting the Vehicles as having superior performance and safety features and by omitting the fact that the Vehicles contain a Defect, whereby the MCU goes

blank and malfunctions, disabling various essential features of the Vehicles, including safety features, and by failing to inform purchasers and lessees how to respond when the Defect manifests.

72.    By engaging in the above-described acts and practices, Defendant has committed an unfair business practice within the meaning of the UCL. Consumers/Class members have suffered substantial injury they could not reasonably have avoided other than by not purchasing the Vehicles.

73.    Defendant's acts and practices have deceived and/or are likely to deceive Nationwide Class members, California Sub-Class members and the public and, thus, constitute a fraudulent business practice.  Defendant uniformly marketed the Vehicles as delivering superior performance and safety features, when, in fact, they do not, because the Vehicles contain a Defect that causes the MCU to malfunction, disabling various essential features of the Vehicles, including safety features, which Defendant knew, or should have known.

74.    As discussed above, Plaintiff, members of the Nationwide Class, and members of the California Sub-Class purchased and/or leased the Vehicles directly from Defendant.  Plaintiff, members of the Nationwide Class, and members of the California Sub-Class were injured in fact and lost money as a result of such acts of unfair competition.

75.    The injuries suffered by Plaintiff, members of the Nationwide Class, and members of the California Sub-Class are greatly outweighed by any potential countervailing benefit to consumers or to competition.  The injuries suffered by Plaintiff, members of the Nationwide Class, and members of the California Sub-Class should have or could have been reasonably avoided.

76.    Defendant received the funds paid by Plaintiff, members of the Nationwide Class, and members of the California Sub-Class and profited by misrepresenting the properties of the Vehicles that it otherwise would not have

sold. Defendant's revenues attributable thereto are, thus, directly traceable to the substantial amount of money paid out by Plaintiff, members of the Nationwide Class, and members of the California Sub-Class.

77. Unless Defendant is enjoined from continuing to engage in the unlawful, unfair, and fraudulent business acts and practices as described herein, which conduct is ongoing, Plaintiff, members of the Nationwide Class, and members of the California Sub-Class will continue to be injured by Defendant's conduct.

78. Defendant, through its acts of unfair competition, has acquired money from the Nationwide Class members and California Sub-Class members. Plaintiff, members of the Nationwide Class, and members of the California Sub-Class request this Court to enjoin Defendant from continuing to violate the UCL.

79. The unlawful, unfair, and fraudulent conduct described herein is ongoing and continues to this date. Plaintiff, members of the Nationwide Class, and members of the California Sub-Class, therefore, are entitled to relief described below as appropriate for this cause of action.

### COUNT III
### Breach of Express Warranty Under California Law
**(On Behalf of the Nationwide Class and, In the Alternative, the California Sub-Class)**

80. Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

81. As an express warrantor, manufacturer, and merchant, Defendant had certain obligations pursuant to its Warranty to repair and replace defects. Cal. Com. Code § 2313.

82. Defendant expressly warranted the touchscreen MCU under its New Vehicle Limited Warranty and Parts, Body & Paint Repair Warranty, promising to repair or replace components that fail to function properly during normal use, for 4 years or 50,000 miles.

83.     However, Defendant sells the Vehicles knowing that the Defect causes serious safety issues and causes numerous essential features to fail when the Vehicles' MCUs malfunction, so that Plaintiff, the Nationwide Class members, and the California Sub-Class members are deprived of warranted features of the Vehicles.

84.     The Defect at issue in this litigation was present at the time of sale and/or lease to Plaintiff, members of the Nationwide Class, and members of the California Sub-Class.

85.     Defendant breached (and continues to breach) its warranties because it wrongfully, uniformly, and repeatedly refuses to repair the Defect, forcing Plaintiff, members of the Nationwide Class, and members of the California Sub-Class to either (a) drive their Vehicles at the risk of the MCUs malfunctioning, shutting down numerous essential features of the Vehicles, including safety features, putting Plaintiff, members of the Nationwide Class, and members of the California Sub-Class at great risk of an accident, or (b) not drive their Vehicles at all in order to avoid such a risk.

86.     Plaintiff, members of the Nationwide Class, and members of the California Sub-Class have used their Vehicles in a manner consistent with the Vehicles' intended use, and have performed each and every duty required under the terms of the Warranty, including presentment, except as may have been excused or prevented by the conduct of Defendant or by operation of law in light of Defendant's unconscionable conduct described throughout this Complaint.

87.     Defendant received timely notice regarding the problems at issue in this litigation and, notwithstanding such notice, has failed and refused to offer an effective remedy.

88.     In addition, upon information and belief, Defendant received numerous complaints, notices of the need for repair and resulting safety issues, and

requests for Warranty repairs and coverage relating to the Defect from other members of the Classes, defined herein.

89.     In its capacity as a supplier and warrantor, and by the conduct described herein, any attempt by Defendant to disclaim or otherwise limit its express warranties in a manner that would exclude or limit coverage for the Defect that was present at the time of sale and/or lease, which Defendant knew about prior to offering the Vehicles for sale and/or lease, and which Defendant did not disclose and did not remedy prior to (or after) sale and/or lease, is unconscionable, and Defendant should be estopped from pursuing such defenses.

90.     Further, any such effort by Defendant to disclaim or otherwise limit liability for the Defect is null and void because Defendant has wrongfully, uniformly, and repeatedly refused and/or failed to properly repair or replace the MCU.

91.     As such, Defendant should be estopped from disclaiming liability for its actions.

92.     Accordingly, Plaintiff, members of the Nationwide Class, and members of the California Sub-Class have suffered damages caused by Defendant's breach of the Warranty and are entitled to recover damages as set forth herein.

**COUNT IV**
**Breach of the Implied Warranty of Merchantability Under California Law**
**(On Behalf of the Nationwide Class and, In the Alternative, the California Sub-Class)**

93.     Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

94.     By operation of law, Tesla, as a manufacturer of the Vehicles and as offeror of its Warranty, impliedly warranted to Plaintiff and Class members that the Vehicles they purchased were of merchantable quality and fit for their ordinary and intended use due to the defective MCU, as described herein.

95.     Consumers purchased and/or leased their Vehicles directly from Tesla, and are, therefore, the intended beneficiaries of Tesla's Warranty.  Plaintiff and Class members were intended to be the ultimate users of the Vehicles, and Tesla's express Warranty was designed for and intended to benefit end-user purchasers.

96.     Tesla breached the implied warranty of merchantability in connection with its sale and/or lease and distribution of the Vehicles. At the point of sale and/or lease, the Vehicles contained a latent Defect which rendered the Vehicles defective and unfit for their ordinary and intended purposes.

97.     Had Plaintiff and Class members known that the Vehicles were defective, they would not have purchased them or would not have purchased them at the price they paid.

98.     Plaintiff and Class members furnished Tesla an opportunity to cure its breach of warranty and complied with all obligations under the implied warranty of merchantability.  Despite knowing the Vehicles were defective prior to or concurrent with its sale and/or lease, Tesla has refused to provide Plaintiff and Class members with appropriate and effective warranty relief.  As a result, Plaintiff and Class members are left without the functional Vehicles they reasonably expected when making their purchasing and/or leasing decisions.

99.     As a direct and proximate result of Tesla's breach of the implied warranty of merchantability, Plaintiff and Class members have sustained damages in an amount to be determined at trial.

## COUNT V
### Violations of Magnuson-Moss Warranty Act
### 15 U.S.C. §§ 2301, *et seq.*
### (On Behalf of the Nationwide Class)

100.   Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

Class Action Complaint

33

101.   15 U.S.C. § 2310(d)(1) provides a claim for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty to obtain damages and other legal and equitable relief.  As explained herein, Defendant failed to comply with the terms of its express and implied warranties with regard to the defective Vehicles.

102.   Defendant is a "supplier" and "warrantor," the Vehicles are "consumer products," and Plaintiff and members of the Classes are "consumers" within the meaning of the MMWA, 15 U.S.C. §§ 2301(1), (3)-(5).

103.   Defendant's express warranties are "written warranties" within the meaning of the MMWA, 15 U.S.C. § 2301(6).  The Vehicles' implied warranties are further covered under 15 U.S.C. § 2301(7).

104.   Defendant breached these warranties by, *inter alia*, selling Vehicles that contained a material Defect in the MCU, concealing this Defect, failing to repair the defective Vehicles in a timely manner, and failing to compensate owners or lessees of the Vehicles for the loss of value and expenses related to the Defect.

105.   Without limitation, the Vehicles share a common Defect in that they are equipped with defective components that cause the touchscreen MCUs to malfunction, disabling essential features of the Vehicles, including safety features, leaving occupants of the Vehicles vulnerable to accidents, serious injury, and death.

106.   Plaintiff has notified Defendant of its breach of its express warranties by contacting Defendant after experiencing the MCU malfunction caused by the Defect and attempting to obtain immediate repair and replacement from Defendant.

107.   Plaintiff also provided written notice, through demand letters sent April 1, 2020, via certified U.S. mail, return receipt requested, regarding violations of the MMWA, and demanded that Defendant remedy the aforementioned violations.

108.   Affording Defendant further opportunity to cure its breach of written warranties would be unnecessary and futile because, at the time of sale and/or lease of each Vehicle, Defendant knew, should have known, or was reckless in not knowing, of its misrepresentations and material omissions concerning the Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the Defect.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and members of the proposed Classes, pray for judgment as follows:

a)   Certification of the Nationwide Class and California Sub-Class under Federal Rule of Civil Procedure 23;

b)   Appointment of Plaintiff as representative of the Nationwide Class and their counsel as Class counsel;

c)   Appointment of Plaintiff as representative of the California Sub-Class and her counsel as Class counsel;

d)   Compensatory and other damages for economic and non-economic damages;

e)   Awarding restitution and disgorgement of Defendant's revenues or profits to Plaintiff and the members of the proposed Classes;

f)   An Order requiring Defendant to cease and desist from engaging in the alleged wrongful conduct and to engage in a corrective advertising campaign;

g)   Statutory pre-judgment and post-judgment interest on any amounts;

h)   Payment of reasonable attorneys' fees and recoverable litigation expenses as may be allowable under applicable law; and

i)   Such other relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action so triable.

Dated:     May 13, 2020                    Respectfully submitted,

By:  /s/ *Kolin Tang*
Kolin Tang
SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP
1401 Dove Street, Suite 510
Newport Beach, CA 92660
Telephone: (323) 510-4060
Facsimile: (866) 300-7367
Email: ktang@sfmslaw.com

James C. Shah
SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (610) 891-9880
Facsimile: (866) 300-7367
Email: jshah@sfmslaw.com

John F. Edgar (to be admitted *pro hac vice*)
Michael R. Owens (to be admitted *pro hac vice*)
EDGAR LAW FIRM LLC
2600 Grand Blvd., Ste. 440
Kansas City, MO 64108
Telephone: (816) 531-0033
Facsimile: (816) 531-3322
Email: jfe@edgarlawfirm.com
            MRO@edgarlawfirm.com

*Attorneys for Plaintiff and the Proposed Classes*